UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/27/2022

HARTFORD FIRE INSURANCE COMPANY,

      Plaintiff,

   v.

QUEENS COUNTY CARTING, INC. and QCC
MAINTENANCE, INC.,

      Defendants.

20 CV 01844 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

 Plaintiff Hartford Fire Insurance Company ("Plaintiff") brings this action against Queens County Carting, Inc. ("QCC") and QCC Maintenance, Inc. ("QCC Maintenance" together, "Defendants") alleging claims for breach of contract, accounts stated, and unjust enrichment after Defendants failed to pay premiums owed under workers compensation insurance policies. (ECF No. 5.) Defendants were due to answer the Complaint by April 6, 2020. (ECF Nos. 8 & 9.) On April 28, 2020, the Clerk of Court entered certificates of default for both Defendants. (ECF Nos. 16 & 17.) Presently before the Court is QCC's motion to vacate the entry of default. (ECF No. 34.) For the following reasons, QCC's motion is DENIED.

## BACKGROUND

 The following facts are taken from Plaintiff's Complaint and deemed true for purposes of this motion.

 Plaintiff issued workers compensation insurance policies to Defendants. (Compl. ¶¶ 8-9.) Pursuant to the polices, Defendants agreed to pay certain premiums to Plaintiff. (*Id*. ¶ 10.) At the conclusion of the policy periods, Plaintiff attempted to perform an audit of Defendants' books and records. (*Id*. ¶ 12.) Defendants originally represented to Plaintiff that they were engaged in

1

"Janitorial" and "Real Estate Agent" business, however it was discovered that their actual business operations consisted of demolition, construction, sanitation, carting, and trucking, which would result in a higher classification code for their employees. (*Id*.)  Defendants refused to cooperate with the audits, and therefore Plaintiff was entitled to re-code their employees to the higher rated classification code for garbage collectors and drivers. (*Id*. ¶ 13.)  QCC then owed additional premiums of $209,889 and QCC Maintenance owed additional premiums of $286,679.40. (*Id*. ¶ 14.)  Plaintiff has sent Defendants Final Insurance Bills setting forth the additional premiums owed and demanding payment, but Defendants have refused to pay. (*Id*. ¶¶ 15-16.)

Plaintiffs filed suit on March 4, 2020. (ECF No. 5.)  On April 3, 2020, two affidavits of service were filed stating both Defendants were served on March 16, 2020, with their answers due by April 6, 2020. (ECF Nos. 8 & 9.)  Defendants failed to answer the Complaint, so Plaintiff filed proposed certificates of default. (ECF Nos. 12 &13.)  On April 28, 2020, the Clerk of Court filed the certificates of default for both Defendants. (ECF Nos. 16 & 17.)  By letter dated June 22, 2020, QCC stated it was never served in this matter, and requested a conference with the Court. (ECF No. 26.)  On March 15, 2021, the Court granted QCC leave to file a motion to vacate the default (ECF No. 29), which it filed on July 19, 2021. (ECF No. 34.)

## **LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure requires the clerk to enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). Then the clerk, if the plaintiff's claim is for a sum certain, or the court may enter a default judgment. Fed. R. Civ. P. 55(b).  After the entry of either a default or a default judgment, the

defaulting party may seek to have the entry set aside. *See* Fed. R. Civ. P. 55(c) & 60(b). A court "may set aside an entry of default for good cause[.]" Fed. R Civ. P. 55(c).

"[T]he standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)." *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). The considerations, however, are the same under both rules: "[1] whether the default was willful, [2] whether setting it aside would prejudice the adversary, and [3] whether a meritorious defense is presented." *Id*. at 277 (Rule 55(c)). When evaluating these factors, courts "must be constantly aware of the 'strong policies favoring the resolution of genuine disputes on their merits.'" *Randazzo v. Sowin*, No. 97 Civ. 0967(DC), 1998 WL 391161, at *2 (S.D.N.Y. July 13, 1998) (quoting *Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983)). Defaults are "generally disfavored," particularly when there are issues of fact, and the defaulting party should prevail when there is doubt about whether default should be granted. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

## DISCUSSION

### I.  Service of Process

QCC first argues that the entry of default is void as QCC was not properly served, and therefore the Court lacks personal jurisdiction. (Motion to Vacate Default Judgment ("Motion") ECF No. 34, at 4-6.) An entry of default, "obtained by way of defective service is void ab initio and must be set aside as a matter of law." *Voice Tele Servs., Inc. v. Zee Telecoms Ltd*., 338 F.R.D. 200, 202 (S.D.N.Y. 2021) (quoting *Howard Johnson Intern., Inc. v. Wang*, 7 F, Supp. 2d 336, 339 (S.D.N.Y. 1998)). The Court must have personal jurisdiction over a defendant to enter a default; and personal jurisdiction requires proper service of process. *Lian Qing Yu v. 58 Asian Corp*., No. 16-cv-7590 (AJN), 2018 WL 1415214, at *1 (S.D.N.Y. Mar. 20, 2018).

3

Here, QCC alleges that Plaintiff listed an incorrect address for its business on its Civil Cover Sheet, (ECF No. 2), and in the Summons (ECF No. 7), and it has therefore never been served. (Motion at 2.) In response, Plaintiff alleges service was effectuated in accordance with Federal Rule of Civil Procedure 4(h)(1)(A) and (e)(1). (Plaintiff Hartford Fire Insurance Company's Memorandum of Law in Opposition to Defendant Queens County Carting, Inc.'s Motion to Vacate Default ("Opp.") ECF No. 33 at 3-5.)

Under Rule 4(h)(1)(A), a corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual," which includes "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(h)(1)(A); (e)(1). According to New York law, service on a corporation may be made by "personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee" and "shall be complete when the secretary of state is so served." N.Y. Bus. Corp. Law § 306(b)(1).

The Affidavit of Service states that QCC was served through the New York Secretary of State by delivering two copies with Business Document Specialist Colleen Banahan. (ECF No. 8.) Service on QCC was proper and complete at this time. *See Bergman v. Kids by the Bunch Too, Ltd.,* No. 14-CV-5005 (DRH)(SIL), 2018 WL 1402249, at *4 (E.D.N.Y. Feb. 16, 2018) (holding service was proper where the corporate defendant was served when the Summons and Complaint was delivered to the New York Secretary of State).

QCC alleges "it appears that the process apparatus of the New York Secretary of State's Office was [] on 'hiatus' due to the COVID lockdown and the New York State Governor's various

Executive Orders . . . ." (Motion at 3.) However, QCC has not provided evidence of a hiatus, or any reason for the Court to believe that these executive orders affected the federal courts. *See Ventilla v. Pac. Indem. Co.,* No. 1:20-cv-08462 (MKV), 2021 WL 5234404, at *2 (S.D.N.Y. Nov. 10, 2021) ("There can be no doubt that the plain text of the Executive Order tolled *only* 'time limits' as prescribed by the procedural laws of the state, *i.e.*, New York state procedural laws, imposed by 'statute, local law, ordinance, order, rule, or regulation.'"); *Citi Connect, LLC v. Local Union No. 3, IBEW*, No. 20 Civ. 5147 (CM), 2020 WL 5940143, at *4 (S.D.N.Y. Oct. 7, 2020) ("neither party identifies any law on whether the Executive Order's tolling on the ground that state courts were closed applies here, where courts were open"). Further, it appears that other parties were served by the Secretary of State during the relevant time period. *See Grinblat v. Hylan Bache LLC,* No. 20-CV-1641 (LDH), 2020 U.S. Dist. LEXIS 94476, at *2 (E.D.N.Y. May 27, 2020) ("On April 7, 2020 - after the onset of the COVID pandemic and the resulting shelter-in-place requirements - plaintiff caused Hylan Bache to be served through New York's Secretary of State."); *Chuzhou Jincheng Metal Work Co. v. AT-SAF Inc*., No. 20-CV-745 (LDH), 2020 U.S. Dist. LEXIS 152356, at *14 (E.D.N.Y. Aug. 20, 2020) ("Defendant was timely served with process on April 28, 2020, via the New York Secretary of State's Office").

Instead, it appears that QCC failed to update its address with the Secretary of State. The New York State Department of State website listed QCC's address as 23-73 26th Street, Astoria, New York, 11102 at the time it would have been served. (Declaration in Opposition to Motion to Vacate Default ("Decl.") ECF No. 33, at Ex. B.) QCC states this address was its prior address before it moved its operations to 3915 Provost Avenue in the Bronx in 2015. (Motion at 1-2.) As corporations are required to maintain a valid service of process address with the Secretary of State, the fault lies with QCC. *See Dominguez v. B S Supermarket, Inc.,* No. 13 CV 7247 (RRM), 2016

WL 7647577, at *6 (E.D.N.Y. Dec. 1, 2016) (collecting cases where courts found service to be proper "where service was effectuated upon the Secretary of State who then sent the pleadings to the wrong address because defendants had failed to notify the State of an address change"); *Trs. of the Local 531 Pension Fund v. Am. Indus. Gases, Inc.*, 708 F. Supp. 2d 272, 276 (E.D.N.Y. 2010) ("AIG's own wilfullness or gross negligence in failing to comply with the law and update its address in the Secretary of State's register explains any lack of actual notice, but does not change the fact that process was proper and complete, and that it conferred personal jurisdiction of this Court over AIG in this case.") Therefore, service was proper and complete, and the Court has personal jurisdiction over QCC.

QCC also argues that it was not properly served as Plaintiff was obligated to also mail a copy of the Summon and Complaint to QCC pursuant to Rule 4(h)(1)(B). However, Plaintiff had no such obligation. Instead, Rule 4 provides that a corporation may be served in a manner prescribed by Rule 4(e)(1) (as was done here), *or* by delivering a copy of the summons and complaint to an officer or agent and, in certain circumstances, mailing a copy to each defendant. Fed. R. Civ. P. 4(h)(1). As QCC was served pursuant to Rule 4(h)(1)(A) and (e)(1), this was not required here.

Therefore, the Court holds that QCC was properly served, and the Court has personal jurisdiction over it.[1]

## II.   Setting Aside Default

---

[1] QCC also argues it was not served with Plaintiff's Motion for Judgment of Default pursuant to Rule 5(a)(1), which contained a mailing certificate with an incorrect address. (Motion at 6.) However, the motion was denied by the Court as moot after Plaintiff submitted a proposed order to show cause (ECF No. 28.) Further, Rule 5(a)(2) states that "[n]o service is required on a party who is in default for failing to appear" if the pleading is not asserting a new claim. Fed. R. Civ. P. 5(a)(2). Plaintiff filed the proposed certificate of default in April of 2020, and QCC's attorney did not make an appearance until May 11, 2020 (ECF No. 18). Therefore, this argument fails.

A default judgment was never entered against QCC. Therefore, in deciding QCC's motion to vacate, the Court will employ the less rigorous standard pursuant to Rule 55(c).

    *a. Willfulness*

A finding of willfulness is appropriate where "there is 'evidence of bad faith' or the default arose 'from egregious or deliberate conduct.'" *See Holland v. James*, No. 05 Civ. 5346(KMW)(KNF), 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (quoting *Am. All. Ins. Co. Ltd., v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)). QCC argues its failure to answer was not willful as it was never served a copy of the Summons and Complaint, and therefore had no knowledge of the lawsuit. (Motion at 8.) However, as discussed above, QCC failed to keep a valid address on file with the Secretary of State. While some courts within this Circuit have not found this failure, by itself, to indicate willfulness, other cases do find willfulness where there is additional conduct that may indicate that this was intentional. *See, e.g., Sea Hope Navigation, Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 338 (S.D.N.Y. 2013) (holding there was more than a "mere failure to update the address listed" where the defendant ceased making payments to its registered agent and took no action to update its address for 4.5 years).

For example, in *Vega v. Trinity Realty Corp.*, No. 14-cv-7417 (RJS), 2021 WL 738693, at *7 (S.D.N.Y. Feb. 24, 2021), not only was the defendant's address not updated with the Secretary of State, but it also did not update the address for over two decades, did not take any steps to correct it even when it acknowledged the error, had no living executives listed, and provided no satisfactory explanation for these failings. The Court held that because the defendant "left plainly incorrect information on file with the Secretary of State for years," and "demonstrated no urgency in fixing the problem," it was "left to conclude that this was a purposeful attempt by [the defendant] to avoid receiving service of process." *Id*. Similarly, here, QCC has had its old address listed for

several years, still has its old address listed on the website, has no executives listed, and failed to explain its failure to update the address. Therefore, the Court will find that QCC's default was willful.

### b. Meritorious Defense

For a defense to be meritorious at this stage, it need not be ultimately persuasive. *Am. All. Ins. Co.,* 92 F.3d at 61. Instead, a meritorious defense exists "if it is good at law so as to give the factfinder some determination to make." *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). To make a sufficient showing of a meritorious defense, a defendant "need not establish [its] defense conclusively, . . . but [it] must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (internal quotation marks omitted); *see also Sony Corp. v. ELM State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986) ("Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts.").

Here, QCC has failed to raise a meritorious defense. First, QCC argues Plaintiff's claims will fail on the merits as it has incorrectly paired QCC and QCC Maintenance together, even though they are two completely separate entities. (Motion at 8-9.) However, whether the Defendants are connected entities is irrelevant, as Plaintiff is not attempting to hold QCC accountable for QCC Maintenance's alleged conduct. Instead, Plaintiff is seeking a sum certain from each for different insurance policies. (Compl. ¶¶ 8-9; 17.) Therefore, QCC's first defense is not persuasive.

Second, QCC argues it is not responsible for the additional premiums, and Plaintiff has not properly or accurately assessed or billed the additional premiums. (Motion at 9.) However, QCC

fails to provide any underlying facts or allegations to support these conclusory contentions. *See Saleh v. Francesco*, No. 11 Civ. 438 (PKC), 2011 WL 5513375, at *5 (S.D.N.Y. Nov. 9, 2011) ("Defendants' conclusory and unsupported defenses are inadequate to establish a meritorious defense in the context of a 'good cause' analysis."); *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 456 (S.D.N.Y. 2007) ("The defendants at bar offer no facts whatsoever to challenge plaintiff's claim for an account stated . . . defendants fail to show that they have a meritorious defense[.]"). Therefore, QCC has failed to adequately allege a meritorious defense.

   c. *Prejudice*

QCC failed to discuss the potential prejudice to Plaintiff, and therefore has failed its burden for this factor. *See Flanagan v. Islamic Rep. of Iran,* 190 F. Supp. 3d 138, (D.D.C. 2016) ("as the movant seeking to demonstrate 'good cause,' Sudan has the burden to show that setting aside the default judgment will pose no prejudice for Plaintiffs"); *Capital Records v. Defries,* No. 11 Civ. 6808(PKC), 2012 WL 3041583, at *8 (S.D.N.Y. July 20, 2012 ("[b]ecause [defendant] is treated as the moving party, he bears the burden of showing that vacating the entry of default will not prejudice the plaintiffs"). However, the Court will still evaluate this factor using Plaintiff's arguments.

Prejudice results when delay causes "the loss of evidence, create[s] increased difficulties of discovery, or provide[s] greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Plaintiff alleges that granting QCC relief from default would cause prejudice as the Court entered default over fourteen months ago, which will cause a significant delay to the proceedings and "other harm," and because Defendant has moved its business location, it likely has also "moved or hidden its business assets as well." (Opp. at 11-12.) However, the Court does not find these arguments to be persuasive. First, "delay alone is not a sufficient basis

9

for establishing prejudice." *Davis*, 713 F.2d at 916. Without more, Plaintiff's claims for prejudice from substantial delay, as well as their allegations of "other harm," are insufficient and conclusory. Second, as stated in its memorandum, QCC moved its business in 2015, well before this action was initiated. There is no reason for the Court to believe that QCC has taken any action to hide assets from Plaintiff.

In sum, the Court holds that QCC's default was willful, and that it has failed to present a meritorious defense, but that setting aside the default would not prejudice Plaintiff. However, "[p]rejudice to the party seeking the default is not required in order to deny a motion to vacate the default[.]" *Kuklachev v. Gelfman*, No. 08-CV-2214 (CPS)(VVP), 2009 WL 497576, at *2 (E.D.N.Y. Feb. 26, 2009). Therefore, the Court holds that QCC has failed to show "good cause" under Rule 55(c) to vacate the entry of default against it.

## CONCLUSION

For the foregoing reasons, QCC's motion to vacate the entry of default is DENIED. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 34.

Dated: January 27, 2022　　　　　　　　　　　　　　　　SO ORDERED:
White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　NELSON S. ROMÁN
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge